(No. 4568— ▮▮▮▮▮▮▮▮▮▮▮▮

WHITEHOUSE TRUCKING COMPANY, FOR THE USE OF THE HANOVER FIRE INSURANCE COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 25, 1955.*

HEINEKE AND CONKLIN, Attorneys for Claimant.

LATHAM CASTLE, Attorney General; MARION G. TIERNAN, Assistant Attorney General, for Respondent.

TOLSON, C. J.

On September 24, 1954, claimant, Whitehouse Trucking Company, filed its complaint herein for the use of the Hanover Fire Insurance Company to recover damages in the amount of $2,551.29, which was thereafter reduced to $2,437.39. The claim is for the loss of a cargo, consisting of a prefabricated or portable house, which claimant was transporting on its tractor-trailer (herein sometimes referred to as "truck") from Toledo, Ohio for delivery to Manitowoc, Wisconsin.

The record consists of the complaint, Departmental Report, transcript of evidence, abstract of evidence, statement, brief and argument of claimant, Commissioner's Report, statement, brief and argument of respondent, and reply brief of claimant.

The facts of the case are as follows:

On June 11, 1952, maintenance personnel of the Division of Highways of respondent, State of Illinois, made two openings on the east half of the pavement of Route No. 83, approximately one mile south of U. S. Route No. 68 near Arlington Heights, Illinois, and at a point approximately 335 feet north of a local east-west highway, known as Hintz Road. All elements of reconstruction, repairs, maintenance and operation of said Route No. 83 have been under the jurisdiction of the Department of Public Works and Buildings, Division of Highways, from the time of the original construction in 1927 to the date of the occurrence hereinafter described.

Route No. 83 consists of a concrete pavement, 20 feet in width, and bordered on each side by an earth shoulder, 8 feet wide. According to the Departmental Report of the Division of Highways, the southerly of the two excavations was 5 feet wide, 15 feet long, and approximately 9 inches deep. The second excavation was 27 feet north of the above described opening, and was 6 feet wide, 8 feet long, and approximately 9 inches deep. The westerly border of each of the excavations was the center line of the pavement.

Early on the morning of June 12, 1952, at approximately 1:30 A. M., Sylvester S. Barenowski was driving the tractor-trailer of claimant north on said Route No. 83 at a speed of approximately 38 to 40 miles per hour. He struck the first of the two openings in the road, which caused his trailer to jackknife, that is, the tractor started to head one way, and the trailer moved in the opposite direction, pulling the tractor with it. Coming from the north, and traveling in a southerly direction on the same road, was a Plymouth Savoy Station Wagon, owned and operated by Nelson J. Waters. Mr. Waters had left a

restaurant in Grays Lake, Illinois at about 1:00 A. M. on June 12, 1952, and was on his way to his home on the south side of Chicago.

Hanover Fire Insurance Company, for whose use the instant proceeding was brought, insured Whitehouse Trucking Company under a motor truck cargo policy, by virtue of which it was compelled to pay the loss sustained, and thereby became subrogated to the claim of Whitehouse Trucking Company against respondent. Adequate proof of the insurance coverage was offered, and received in evidence, and there is no dispute with reference to it.

Claimant alleges that respondent was negligent in that it failed to provide proper and adequate signs, barricades, and flares in and about the highway where the openings were made to warn oncoming vehicles of the dangerous condition of the highway.

This Court in previous decisions has established, as a matter of law, that the state is not an insurer of all accidents, which may occur by reason of the condition of its highways. Nevertheless, it is liable for:

(a) Positive acts of negligence.

(b) Knowledge of a dangerous condition in the highway, and failure to repair or give adequate warnings.

(c) Constructive knowledge of a dangerous condition in the highway, and failure to repair or give adequate warning. *Visco* vs. *State,* 21 C.C.R. 480.

To determine whether the state is guilty of negligence, or the complainant is guilty of contributory negligence, will require a careful scrutiny of the testimony introduced in said proceedings. The following facts are not disputed in the testimony:

1. Whatever rights the Whitehouse Trucking Company may have under this complaint, such rights are subrogated to the Hanover Fire Insurance Company by reason of its payment for the loss sustained.

2. The Division of Highways of the State of Illinois removed two sections of pavement in the east lane of State Route No. 83 on June 11, 1952.

3. At the close of the day's work on June 11, 1952, about 4:30 P. M., adequate, and, in fact, elaborate warning signs, as well as lighted bomb flares were placed to protect the traveling public.

4. The accident occurred between 1:00 and 1:30 A. M. on the morning of June 12, 1952.

5. It was dark and windy, and a hard rain was in progress.

It is believed that a further discussion regarding the number and position of the warning devices, which are described below, will be helpful.

Site 1. On the east highway shoulder, at a point approximately 350 feet south of Hintz Road, which is about 650 feet south of Site 3, the scene of the accident, a reflectorized sign, bearing the legend ''Barricade Ahead'', was mounted and in place on a tripod, and was lighted with a bomb flare.

Site 2. On the east highway shoulder, at a point just north of Hintz Road, approximately 300 feet south of the first excavation, a reflectorized sign, bearing the legend ''One Way Traffic'' was mounted and in place on a metal tripod, and was lighted by a bomb flare.

Site 3. This was the scene of the accident. The south excavation was an open area, 5 feet wide and 15 feet long, running lengthwise along the center strip of the pavement.

The north excavation was located 27 feet north of the south excavation, and was an open area, 6 feet wide and 8 feet long, running lengthwise along the center strip of the pavement.

The total area of Site 3 was a strip approximately 50 feet long, running along the east side of the highway, and was protected as follows:

### SOUTH EXCAVATION

(a) A reflectorized barricade was set up in front of the excavation, and was lighted by three bomb flares.

(b) Two reflectorized barricades were set up along the west side of the excavation, and each was lighted by a bomb flare.

(c) A reflectorized barricade was set up on the north edge of the excavation, and was lighted by two bomb flares.

### NORTH EXCAVATION

(a) A reflectorized barricade was set up on the south side of the excavation, and was lighted by two bomb flares.

(b) The west side of the excavation was protected by one bomb flare.

(c) A reflectorized barricade was set up on the north side of the excavation, and was lighted by two bomb flares.

Upon a recapitulation of the scene of the accident, it appears that six reflectorized barricades, and twelve lighted bomb flares were in place at the end of the day's work on June 11, 1952.

Site 4. At a point 900 feet north of the north excavation on the west side of the shoulder, a reflectorized sign, bearing the legend "Slow", was in place, and was lighted by a bomb flare.

At this point, may it be pointed out that, if the barricades and lighted flares were in place at 1:30 A.M. on June 12, 1952, the state would have completely discharged its duty to the traveling public, and no recovery could be allowed under this complaint. Turning our attention to the condition of the highway at the time of the accident, we find from the record that three witnesses were present, and testified in this proceeding as to such conditions.

Sylvester S. Barenowski, called as a witness on behalf of the complainant, stated that he was employed by the Whitehouse Trucking Company, and was the driver of the truck at the time of the accident. It is to be noted that he was no longer an employee of the Company at the date of the hearing. He testified that he did not see the barricades, or any lighted bomb flares at Sites 1, 2, and 3, the scene of the accident, or 4. He stated that it was raining hard, and that the south excavation was filled with water, and had the same appearance as that of the wet pavement. Further, he stated that his truck and trailer jackknifed after it hit the south excavation, and he was unable to reach his brakes, as he was bounced around in the cab of the truck. After the accident, he testified that he found unlighted bomb flares around Site 3, and found one barricade in the excavation, and another along the ditch. He stated he lighted fusees from his truck, and helped Jim Bailey, another witness, relight two or three of the Highway Department bomb flares. These bomb flares were so wet that it required the heat from the fusees to dry them off before they would light again.

James R. Bailey of Milwaukee, Wisconsin, called as a witness for the complainant, stated that he was driving a gas truck south on Route No. 83, and that he saw the

truck of claimant jackknife across the pavement, as he was approaching. Bailey was a totally disinterested witness, and stated that he had never met Barenowski before the accident, and had not seen him again until the day of the hearing.

He testified positively that he did not see any barricades or lighted bomb flares at Sites 1, 2 or 3, the scene of the accident, but did state that, when he looked north, he could see a lighted flare at Site 4, 900 feet north of Site 3. He stated that he set out fusees from his truck on two occasions, and that he helped Barenowski light two or three of the bombs belonging to the Highway Department. He likewise mentioned the fact that the bombs were drenched, and could only be relit by using the fusees. Possibly the most important aspect of his testimony was that, on arrival at the scene, the police set out additional bomb flares.

Nelson J. Waters was the third and final witness at the scene of the accident, and was called on behalf of respondent. His car struck, or was struck by the claimant's truck or trailer on the west side of the pavement in the accident area at Site 3. He testified that he was driving south on Route No. 83, and, before he got to the scene of the accident, he saw the lighted barricade at Site 4. He stated he saw the truck jackknife after it hit the south excavation. He further stated that he saw the barricade at the south edge of the south excavation, but that it was not in front of the hole, but was on the east side of the pavement in about the middle of the lane. He also stated that he saw a barricade at the north edge of the north excavation.

Upon being asked:

"Q. Did you notice any bomb flares at or around either excavation as you approached?

A. Whether they were there or not, I do not know. Whether they were burning or not, I do not know. I could see the barricades.
Q. You could see the barricades?
A. Yes, my lights took care of that."

As has been previously mentioned, Site 3, the scene of the accident, at one time had six reflectorized barriers and twelve lighted bomb flares, yet at the time of the accident two witnesses testified that there were no lighted bomb flares, and one witness said he did not know whether there were any lighted bomb flares. To this is added the sworn and undisputed testimony that Barenowski and Bailey lighted two or three bomb flares, and that the police set out additional bomb flares when they arrived at the scene of the accident.

The Court, therefore, concludes that at the time of the accident none of the twelve bomb flares were in fact lighted, and the only warning device in place was a reflectorized barrier to the right of the south excavation.

The existence, or non-existence of the reflectorized barriers beyond this point is immaterial, for the truck had started to jackknife after hitting the first hole, and it may very well be that the truck or trailer knocked down the other barriers mentioned by Mr. Walters.

The basic question to be answered by this Court is: Had the state discharged its duty to the traveling public by setting out adequate warning signs at the end of the day's work, or was it obligated to take further precaution to see that the lights and the signs remained in place throughout the night?

As has been pointed out, the weather conditions were inclement. A high wind was blowing, and it was raining very hard. The warning signs, mentioned herein, were mounted on metal tripods, rather than being on any permanent bases. It is conceivable that the high

winds blew the tripods over, and the heavy rains extinguished the bomb flares.

The testimony of William C. Beckman, an employee of the Highway Department, is significant. He stated that he set up the barricades, and lit the flares at the end of the day's work. He was then asked:

"Q. Was it your duty to return to the repair area to check the warning equipment?
A. No."

From a reading of the record, it does not appear that it was the duty of any highway employee to make additional inspections of the repair area after leaving at the end of the day's work.

The case of *Joseph Pomprowitz, Et Al* vs. *State*, 16 C.C.R. 230, is in many respects similar to the case at bar, in that the state had removed a section of the pavement on U. S. Route No. 41, and, at about 4:30 P.M. the following morning, a truck driven by an employee of Joseph Pomprowitz struck the excavation, and overturned. Employees of the state testified that they had set out barricades and flares at the end of the day's work, but the evidence indicated they were not in place at the time of the accident.

At page 235 of said Report, the Court stated:

"There can be no question that the respondent in the construction, maintenance, and repair of its highways has a duty to exercise reasonable care and caution to prevent injury to or destruction of life and property. Where the respondent, in the course of road repairs, leaves a deep excavation in the highway, it is incumbent upon it to take reasonable measures to guard against injury to the public. Minimum safeguards would be adequate barriers and suitable lights, warning of the hazardous and dangerous situation."

At page 236, the Court stated:

"The Court is of the opinioin that the respondent was negligent in the performance of its duty to the traveling public by failing to maintain, during the night of August 21 and the morning of August 22, 1954, proper

warning of the existence of this dangerous excavation. Respondent cannot meet its obligation to motorists traveling on a busy, four lane highway, in these days of almost continuous commercial and personal motor travel by putting up a single barrier, lighting two or three flares in late afternoon, and returning the following morning with a hope and a prayer that all is well."

This Court is of the opinion that, when the state removes a section of the pavement, and thereafter leaves the excavation open at the end of a day's work, it is duty bound to see that adequate warning devices are installed about the work area.

The Court is also of the opinion that, once the warning devices are in place, it is the duty of the state to take reasonable precaution to see that such warning devices remain in place, and are in working order.

In the instant case, the heavy winds and rains completely knocked out the warning system, yet no one from the Highway Department made any effort to correct the condition, until after the accident had been reported.

Respondent argues that the complainant is guilty of contributory negligence in that he passed over Route No. 83 a week prior to the accident, and should have noticed that work was being done on the west lane of travel. However, in the absence of any lighted warning devices, the Court believes that the driver of the truck could reasonably assume the repair work was finished, and that he could proceed along the highway without danger.

In support of its brief as to the adequacy of the warning devices, respondent cites the following cases:

*Hubbard* vs. *State of Illinois*, 21 C.C.R. 495.
*Terracino* vs. *State of Illinois*, 21 C.C.R. 177.
*Beenes* vs. *State of Illinois*, 21 C.C.R. 83.
*Mason* vs. *State of Illinois*, 21 C.C.R..446.
*Williams* vs. *State of Illinois*, 21 C.C.R. 597.

In negligence cases the question of law is relatively simple, and the cases usually are decided solely from the facts. In the instant case, we believe that the facts fail to show adequate warning devices in place and in working order *at the time of the accident,* as distinguished from 4:30 P.M. in the afternoon of June 11, 1952, and 8:00 A.M. on the morning of June 12, 1952.

The Court, therefore, finds that respondent was negligent in failing to provide adequate warning devices. It further finds that complainant was free from contributory negligence.

An award is, therefore, made to the Whitehouse Trucking Company for the use of the Hanover Fire Insurance Company in the sum of $2,437.39.